UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 13 |
| RONALD A. HANSEN ) | CASE NO. 04-20254 WCH |
| Debtor ) | |

**APELLEE'S DESIGNATION OF ADDITONAL DOCUMENTS TO BE INCLUDED IN THE RECORD ON APPEAL**

Now comes Ronald A. Hansen and moves this Honorable Court to forward the following documents to the Federal District Court:

1. Order dated May 13, 2005 Granting (7) Motion to Void Judicial Lien (Docket # 39);

2. Debtor's Motion to Strike Objection by William R. Mullan and Steven Sahagian re: 5 River Haven Lane, E. Falmouth MA (Docket # 16);

3. Appraisal of 5 River Haven Lane, Falmouth, MA, dated January 26, 2005 in the amount of $570,000.00 (Docket # 38).

Ronald A. Hansen
by his attorney,

_____
Henry C. Ellis BBO#153360
Assiran, Ellis & Devlin
79 Church Green
Taunton, MA  02780-3445
508-824-7597

Date:  August 18, 2005

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DISTRICT

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 13 |
| Ronald A. Hansen ) | CASE NO. 04-20254 WCH |
| Debtor ) | |

**CERTIFICATE OF SERVICE**

    I, Henry C. Ellis, hereby certify that I have this day mailed a copy of the within APELLEE'S DESIGNATION OF ADDITIONAL DOCUMENTS TO BE INCLUDED IN THE RECORD ON APPEAL, by first class mail, postage prepaid (by facsimile or electronic mail if so noted) to the following:

Doreen Solomon, Esq.      **Electronically mailed @**
Chapter 13 Trustee      13trustee@ch13boston.com
P.O. Box 8250
Boston, MA 02114-0033

William Mullen
49 Porter Rd.
Westwood, MA 02090

Steven Sahagian
79 Rutledge Rd.
Belmont, MA 02478

Ronald Hansen     Debtor
5 River Haven Lane
E. Falmouth, MA 02536

                                      Henry C. Ellis, Esquire (BBO# 153360)
                                      Assiran, Ellis & Devlin
                                      79 Church Green
                                      Taunton, MA 02780
                                      508-824-7597

Date:   August 18, 2005

UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 13 |
| RONALD A. HANSEN ) | CASE NO. 04-20254 WCH |
| Debtor ) | |

**DEBTOR'S MOTION TO STRIKE OBJECTION BY WILLIAM R. MULLEN AND STEVEN SAHAGIAN RE: 5 River Haven Lane, E. Falmouth MA**

Now comes the Debtor, Ronald A. Hansen, and moves this Honorable Court to strike the OBJECTION BY WILLIAM R. MULLEN AND STEVEN SAHAGIAN RE: 5 River Haven Lane, E. Falmouth, MA (the "Objection"). As grounds thereto the Debtor states that:

1. the objection was never served on the Debtor or his counsel;
2. the objection fails to comply with MLBR 4003-1(b).

Wherefore, the Debtor requests this Honorable Court to strike the Objection and that the Debtor's Motion To Avoid Judicial Lien be allowed without a hearing.

Ronald A. Hansen
by his attorney,

_____
Henry C. Ellis BBO#153360
Assiran, Ellis & Devlin
79 Church Green
Taunton, MA 02780-3445
508-824-7597

Date: January 28, 2005

# UNIFORM RESIDENTIAL APPRAISAL REPORT

File No. RIVER5

## Property Description

| Field | Value |
|---|---|
| Property Address | 5 RIVER HAVEN LANE |
| City | EAST FALMOUTH |
| State | MA |
| Zip Code | 02536 |
| Legal Description | BARNSTABLE CTY REG OF DEEDS: B-10717 P-309 |
| County | BARNSTABLE |
| Assessor's Parcel No. | 32-4-14-11 |
| Tax Year | 2005 |
| R.E. Taxes $ | |
| Special Assessments $ | 0.00 |
| Borrower | N/A |
| Current Owner | RONALD & MARIE HANSEN |
| Occupant | ☒ Owner ☐ Tenant ☐ Vacant |
| Property rights appraised | ☒ Fee Simple ☐ Leasehold ☐ Project Type ☐ PUD ☐ Condominium (HUD/VA only) |
| HOA $ N/A /Mo. | |
| Neighborhood or Project Name | EAST FALMOUTH |
| Map Reference | SUBD.LOT#11 |
| Census Tract | 0146.00 |
| Sale Price $ | MKT VALUE |
| Date of Sale | N/A |
| Description and $ amount of loan charges/concessions to be paid by seller | N/A |
| Lender/Client | CLIENT: RONALD HANSEN |
| Address | PO BOX 571, EAST FALMOUTH, MA 02536-0571 |
| Appraiser | CLANCY APPRAISAL CO., INC. |
| Address | 80 DAVIS STRAITS, SUITE 202, FALMOUTH, MA 02540 |

### Neighborhood

| Location | ☐ Urban ☒ Suburban ☐ Rural |
|---|---|
| Built up | ☒ Over 75% ☐ 25-75% ☐ Under 25% |
| Growth rate | ☐ Rapid ☒ Stable ☐ Slow |
| Property values | ☒ Increasing ☐ Stable ☐ Declining |
| Demand/supply | ☐ Shortage ☒ In balance ☐ Over supply |
| Marketing time | ☐ Under 3 mos. ☒ 3-6 mos. ☐ Over 6 mos. |

Predominant occupancy: ☒ Owner ☐ Tenant ☒ Vacant (0-5%) ☐ Vac.(over 5%)

Single family housing PRICE $(000) / AGE (yrs): 80 Low NEW / 700 High 75 / Predominant 200 25

Present land use %: One family 90, 2-4 family, Multi-family, Commercial, VACANT 10

Land use change: ☒ Not likely ☐ Likely ☐ In process To: ___

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: SUBJECT IS BOUND NORTH BY ROUTE 28, WEST BY EEL POND ROAD, SOUTH BY VINEYARD SOUND, WEST BY BOURNES POND.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): SUBJECT IS LOCATED IN THE EAST FALMOUTH VILLAGE IN THE TOWN OF FALMOUTH. HOUSING STYLES CONSIST OF CAPE CODS, COLONIALS, CONTEMPORARY, AND RANCH DESIGNS. SCHOOLS, HOUSES OF WORSHIP AND STORES ARE LOCATED WITHIN 1.5 MILES. PUBLIC SALT WATER SWIMMING IS AVAILABLE WITHIN 1 MILE. EMPLOYMENT CENTERS ARE LOCATED WITHIN 4 MILES IN FALMOUTH CENTER. EMPLOYMENT STABILITY IS CONSIDERED AVERAGE, AND APPEAL TO MARKET IS GOOD.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time -- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): MARKETING TIMES ARE CURRENTLY 3-6 MONTHS. DEMAND & SUPPLY ARE CURRENTLY IN BALANCE. THIS MARKET HAS PROVIDED A NORMAL AMOUNT OF SALES FOR A SLIGHTLY INCREASING MARKET. LOAN DISCOUNTS, BUYDOWNS & CONCESSIONS ARE NOT COMMON IN THE AREA. OTHER SIMILAR HOMES IN THE AREA ARE CURRENTLY LISTED FOR SALE FROM $575,000 TO $625,000.

### PUD

Project Information for PUDs (if applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)? ☐ Yes ☐ No
Approximate total number of units in the subject project ___
Approximate total number of units for sale in the subject project ___
Describe common elements and recreational facilities: ___

### Site

| Field | Value |
|---|---|
| Dimensions | REFER TO ATTACHED PLOT PLAN |
| Topography | LEVEL |
| Site area | 27,111 SF |
| Corner Lot | ☐ Yes ☒ No |
| Size | .62 ACRE |
| Specific zoning classification and description | AGRICULTURAL-B (40,000 SF MINIMUM) |
| Shape | IRREGULAR |
| Zoning compliance | ☐ Legal ☒ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning |
| Drainage | NO APPARENT PROBLEM |
| Highest & best use as improved | ☒ Present use ☐ Other use (explain) |
| View | TYPICAL/AREA |
| Landscaping | AVERAGE |
| Driveway Surface | STONE |
| Apparent easements | TYPICAL UTILITY ESMNT. |
| FEMA Special Flood Hazard Area | ☐ Yes ☒ No |
| FEMA Zone | C |
| Map Date | 7/15/92 |
| FEMA Map No. | 255211-12G |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private |
|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | HARDENED GRAVEL | ☒ | |
| Gas | ☒ | | Curb/gutter | | | |
| Water | ☒ | | Sidewalk | | | |
| Sanitary sewer | | PRIVATE/TYPICAL | Street lights | | | |
| Storm sewer | | | Alley | | | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): NO EVIDENCE OF SEPTIC SEEPAGE NOTED. THE SUBJECT LOT CONFORMED TO ZONING REQUIREMENTS AT THE TIME OF SUBDIVISION AND MAY BE REBUILT IF DESTROYED. PER B.O.H., THERE IS A TITLE V SEPTIC SYSTEM.

### Description of Improvements

| GENERAL DESCRIPTION | | EXTERIOR DESCRIPTION | | FOUNDATION | | BASEMENT | | INSULATION | |
|---|---|---|---|---|---|---|---|---|---|
| No. of Units | 1 | Foundation | PRD.CONC. | Slab | NO | Area Sq. Ft. | 1,188 SF | Roof | |
| No. of Stories | 1.75 | Exterior Walls | CLBD&SHINGLE | Crawl Space | NO | % Finished | NO FINISH | Ceiling | ☒ |
| Type (Det./Att.) | DET. | Roof Surface | ARCH SHINGLE | Basement | YES FULL | Ceiling | JOISTS | Walls | ☒ |
| Design (Style) | CONTCAPE | Gutters & Dwnspts. | ALUMINUM | Sump Pump | NO | Walls | CONCRETE | Floor | ☒ |
| Existing/Proposed | EXISTING | Window Type | AND.THERMO | Dampness | NO EVIDENCE | Floor | CONCRETE | None | |
| Age (Yrs.) | 6 | Storm/Screens | NO/YES | Settlement | NO EVIDENCE | Outside Entry | YES | Unknown | |
| Effective Age (Yrs.) | 3 | Manufactured House | NO | Infestation | NO EVIDENCE | BULKHEAD | | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | | | 1,188 SF |
| Level 1 | AREA | 1 | 1 | 1 | | | | | 1.5 | | | 1,188 SF |
| Level 2 | | | | | | 1 | | 2 | 1 | | | 1,069 SF |

Finished area above grade contains: 7 Rooms; 3 Bedroom(s); 2.5 Bath(s); 2,257 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE: | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | HDWD&CPT/GD | Type | FHW | Refrigerator | ☒ | None | | Fireplace(s) # METAL | ☒ | None | ☐ 2-CAR ATT. |
| Walls | PLASTER/GD | Fuel | GAS | Range/Oven | ☒ | Stairs | | Patio | | Garage | # of cars |
| Trim/Finish | WOOD/GD | Condition | GOOD | Disposal | | Drop Stair | | Deck WOOD | ☒ | Attached | 2 |
| Bath Floor | VINYL/GD | COOLING | | Dishwasher | ☒ | Scuttle | ☒ | Porch | | Detached | |
| Bath Wainscot | PLASTER/GD | Central | NO | Fan/Hood | ☒ | Floor | | Fence | | Built-In | |
| Doors | MASONITE/GD | Other | NONE | Microwave | ☒ | Heated | | Pool | | Carport | |
| | | Condition | N/A | Washer/Dryer | | Finished | | | | Driveway | 2 |

Additional features (special energy efficient items, etc.): THERE IS A GAS FIREPLACE, CATHEDRAL CEILING, & 3 SKYLIGHTS IN THE LIVING ROOM, ADDITIONAL SKYLIGHTS IN THE FOYER AREA, AND 2 ADDITIONAL SKYLIGHTS OVER GARAGE.

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.: SUBJECT IS A 6 YR OLD CONTEMPORARY CAPE COD STYLE DWELLING IN GOOD CONDITION AND WITH GOOD QUALITY. 5% DEPRECIATION IS BASED ON THE AGE/LIFE METHOD. NO NOTED FUNCTIONAL OR EXTERNAL OBSOLESCENCE.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: THERE ARE NO KNOWN OR APPARENT ADVERSE ENVIRONMENTAL CONDITIONS KNOWN TO THE APPRAISER THAT WOULD AFFECT THE VALUE.

# UNIFORM RESIDENTIAL APPRAISAL REPORT

File No. RIVER5

## Valuation Section

### COST APPROACH

| | | |
|---|---|---|
| ESTIMATED SITE VALUE | = $ | 300,000 |
| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS: | | |
| Dwelling 2,257 SF Sq. Ft. @ $ 110.00 | = $ | 248,270 |
| 1,188 SF BSMT. Sq. Ft. @ $ 15.00 | = | 17,820 |
| FPL/BTHS/DK/CATH/6SKYS/1.5 BTHS | = | 19,000 |
| Garage/Carport 552 Sq. Ft. @ $ 35.00 | = | 19,320 |
| Total Estimated Cost New | = $ | 304,410 |
| Less Physical Functional External | | |
| Depreciation 15,221 | = $ | 15,221 |
| Depreciated Value of Improvements | = $ | 289,189 |
| "As-is" Value of Site Improvements | = $ | 20,000 |
| INDICATED VALUE BY COST APPROACH | = $ | 609,189 |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property): EXTRACTION METHOD WAS UTILIZED IN ESTIMATING SITE VALUE. REPRODUCTION COST NEW IS DERIVED FROM LOCAL CONTRACTORS & COST MANUALS. 5% DEPRECIATION BASED ON AGE/LIFE METHOD WITH AN AVERAGE ECONOMIC LIFE OF 60 YEARS. REMAINING ECONOMIC LIFE IS 57 YEARS. SEE ATTACHED ADDENDUM FOR G.L.A. CALCULATIONS. GLA IS APPROXIMATELY ONLY WITH DEVIATIONS OF NO MEASURABLE CONSEQUENCES.

### SALES COMPARISON ANALYSIS

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 5 RIVER HAVEN LANE EAST FALMOUTH | 68 SOUTHVIEW WAY EAST FALMOUTH | | 21 VALERIE CIRCLE EAST FALMOUTH | | 16 RIVER HAVEN LANE EAST FALMOUTH | |
| Proximity to Subject | | 1.81 miles | | 2.53 miles | | 0.02 miles | |
| Sales Price | $ MKT.VALUE | $ | 634,900 | $ | 619,000 | $ | 599,000 |
| Price/Gross Living Area | $ | $ 244.38 | | $ 237.26 | | $ 234.35 | |
| Data and/or Verification Source | ON SITE INSPECTION | ASSESSORS/MLS/B+T | | ASSESSORS-MLS BANKER & TRADESMAN | | ASSESSORS, MLS, B&T, | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjust. | DESCRIPTION | +(-)$ Adjust. | DESCRIPTION | +(-)$ Adjust. |
| Sales or Financing Concessions | | NONE KNOWN | | NONE KNOWN | | NONE KNOWN | |
| Date of Sale/Time | | 9/16/04 | +13,746 | 3/30/04 | +30,950 | 5/3/04 | +26,200 |
| Location | GOOD | GOOD | | GOOD | | GOOD | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 27,111 SF | 23,719 SF | | 20080 SF | | 37758 SF | -10,000 |
| View | TYPICAL/AREA | TYPICAL/AREA | | GOOD/POND | -15,000 | TYPICAL/AREA | |
| Design and Appeal | CONCAPE/GD | CONCAPE/GD | | CONCAPE/GD | | CONTEMP/GD | |
| Quality of Construction | GOOD | VERY GOOD | -25,000 | GOOD | | GOOD | |
| Age | 6YRS/3EFF | 4YRS/2EFF. | -1,000 | 16YRS/3EFF. | | 6YRS/2EFF. | -1,000 |
| Condition | GOOD | GOOD | | GOOD | | GOOD | |
| Above Grade Room Count | Total Bdrms Baths 7 : 3 : 2.5 | Total Bdrms Baths 8 : 4 : 2.5 | | Total Bdrms Baths 8 : 3 : 3 | -2,000 | Total Bdrms Baths 7 : 4 : 2 | +4,000 |
| Gross Living Area | 2,257 Sq. Ft. | 2,598 Sq. Ft. | -11,935 | 2,609 Sq. Ft. | -12,320 | 2,556 Sq. Ft. | -10,465 |
| Basement & Finished Rooms Below Grade | 1,188 SF NO FINISH | 1698 SF NO FINISH | | 2180 SF NO FINISH | | 720 SF 100%FINISH | -5,000 |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FHW-GAS/NONE | FHA-GAS/YES | -5,000 | FHA-GAS/YES | -5,000 | FHA-GAS/YES | -5,000 |
| Energy Efficient Items | NONE | NONE | | NONE | | NONE | |
| Garage/Carport | 2-CAR ATT. | 2-CAR ATT. | | 2-CAR ATT. | | 2-CAR ATT. | |
| Porch, Patio, Deck, | DECK | DECK | | PATIO | | DK/PTO/OPCH | -2,000 |
| Fireplace(s), etc. | FIREPLACE | FIREPLACE | | FIREPLACE | | FIREPLACE | |
| Fence, Pool, etc. | NONE | NONE | | POOL | -15,000 | NONE | |
| Net Adj. (total) | | - $ | 29,189 | - $ | 18,370 | - $ | 3,265 |
| Adjusted Sales Price of Comparable | | Net -4.6 % Gross 8.9 % $ | 605,711 | Net -3.0 % Gross 13.0 % $ | 600,630 | Net -0.5 % Gross 10.6 % $ | 595,735 |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.): GLA IS ADJUSTED AT $35/SF. TIME IS ADJUSTED AT 6% PER YEAR FOR APPRECIATION. SALE 1 IS ADJUSTED FOR SUPERIIOR QUALITY OF CONSTRUCTION. SALE 2 IS ADJUSTED FOR GOOD POND VIEW AND INGROUND POOL. SALE 3 IS ADJUSTED FOR LARGER SITE SIZE. ALL COMPARABLES ARE GIVEN EQUAL WEIGHT IN DETERMINING THE FINAL VALUE ESTIMATE. IN ORDER TO FIND MOST SIMILAR COMPARABLES, SEARCH EXCEEDED SIX MONTHS IN TIME AND ONE MILE IN DISTANCE.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source, for prior sales within year of appraisal | NO PRIOR SALES W/IN 3 YRS | 4/2/02 $453,000 | NO PRIOR SALES W/IN 3 YRS. | NO PRIOR SALES W/IN 3 YRS. |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal: SUBJECT PROPERTY HAS NOT SOLD WITHIN THE LAST THREE YEARS. APPRAISER IS UNAWARE OF ANY CURRENT OR PAST SALES, LISTINGS, OR CONTRACTS TO SELL WITHIN THE LAST THREE YEARS.

INDICATED VALUE BY SALES COMPARISON APPROACH ............................................................. $ 600,000
INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ /Mo. x Gross Rent Multiplier = $

### RECONCILIATION

This appraisal is made ☒ "as is" ☐ subject to the repairs, alterations, inspections or conditions listed below ☐ subject to completion per plans & specifications.
Conditions of Appraisal: NO CONDITION OF VALUATION. INSUFFICIENT RENTAL DATA TO DETERMINE A RELIABLE GRM. APPRAISAL IS INTENDED FOR USE IN A BANKRUPTCY MATTER ONLY. IT IS NOT INTENDED FOR ANY OTHER USE. INTENDED USER IS RONALD HANSEN.
Final Reconciliation: SALES COMPARISON ANALYSIS IS THE BEST INDICATOR OF VALUE AND IS SUPPORTED HERE BY THE COST APPROACH. THE LAND VALUE ESTIMATE IN THE COST APPROACH CONTRIBUTES 50% OF TOTAL INDICATED VALUE DUE TO THE SUBJECT'S CLOSE PROXIMITY TO AMENITIES AND IS TYPICAL FOR THE AREA.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/FNMA form 1004B (Revised 6/93 ).
I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF JANUARY 26, 2005
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 600,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): | |
|---|---|---|
| Signature: Joseph M. C[signature] | Signature | ☐ Did ☐ Did Not Inspect Property |
| Name JOSEPH M. CLANCY | Name | |
| Date Report Signed January 27, 2005 | Date Report Signed | |
| State Certification # MA CERT.GEN. #76 State MA | State Certification # | State |
| Or State License # State | Or State License # | State |

| | | | | |
|---|---|---|---|---|
| Borrower/Client | N/A | | | |
| Property Address | 5 RIVER HAVEN LANE | | | |
| City EAST FALMOUTH | County BARNSTABLE | State MA | Zip Code 02536 |
| Lender CLIENT: RONALD HANSEN | | | | |

In accordance with the Jurisdictional Exception of the USPAP, the Market Value definition of the court having jurisdiction in any litigation regarding the value of real estate the value of real estate applies.

The definition of Market Value in Massachusetts is:

"The highest price which a hypothetical willing purchaser would pay to a hypothetical willing vendor in an assumed free and open market."
Epstein v. Boston Housing Authority  (1945) 317 Mass. 297.

APPRAISAL IS INTENDED FOR USE IN A U.S. BANKRUPTCY MATTER ONLY.

### SPECIAL ADDENDA

THE SUBJECT PROPERTY HAS A MARKET VALUE ESTIMATE OF $600,000 AS OF JANUARY 26, 2005.  HOWEVER, IT IS CUSTOMARY TO DEDUCT BROKERS COMMISSIONS TO ARRIVE AT THE NET AMOUNT THAT THE DEBTOR WOULD RECEIVE UPON SALE.  THEREFORE, A 6% COMMISSION OR $36,000 WOULD PROVIDE A NET AMOUNT TO THE DEBTOR OF $564,000.  IF A 5% COMMISSION WERE APPLIED OR $30,000, THE NET AMOUNT TO THE DEBTOR WOULD BE $570,000.

Form TADD — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 5 RIVER HAVEN LANE | | | | | |
| City | EAST FALMOUTH | County | BARNSTABLE | State | MA | Zip Code 02536 |
| Lender | CLIENT: RONALD HANSEN | | | | | |



**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

> * Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:** 5 RIVER HAVEN LANE, EAST FALMOUTH, MA 02536

**APPRAISER:**
Signature: *[signature]*
Name: JOSEPH M. CLANCY, ASA, MRA
Date Signed: January 27, 2005
State Certification #: MA CERT.GEN. #76
or State License #:
State: MASSACHUSETTS
Expiration Date of Certification or License: 7/23/05

**SUPERVISORY APPRAISER (only if required):**
Signature:
Name:
Date Signed:
State Certification #:
or State License #:
State:
Expiration Date of Certification or License:

☐ Did   ☐ Did Not Inspect Property

Site Map

| | | | | |
|---|---|---|---|---|
| Borrower/Client | N/A | | | |
| Property Address | 5 RIVER HAVEN LANE | | | |
| City | EAST FALMOUTH | County BARNSTABLE | State MA | Zip Code 02536 |
| Lender | CLIENT: RONALD HANSEN | | | |





Location Map

| | | | | |
|---|---|---|---|---|
| Borrower/Client | N/A | | | |
| Property Address | 5 RIVER HAVEN LANE | | | |
| City EAST FALMOUTH | County BARNSTABLE | State MA | Zip Code 02536 |
| Lender CLIENT: RONALD HANSEN | | | | |



**SUBJECT PICTURES**

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 5 RIVER HAVEN LANE |
| City EAST FALMOUTH | County BARNSTABLE    State MA    Zip Code 02536 |
| Lender CLIENT: RONALD HANSEN | |



FRONT VIEW OF SUBJECT PROPERTY

REAR VIEW OF SUBJECT PROPERTY

STREET SCENE OF SUBJECT PROPERTY

Form MAP.SketchI — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

Comparable Photo Page

| Borrower/Client | N/A | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 5 RIVER HAVEN LANE | | | | | |
| City | EAST FALMOUTH | County | BARNSTABLE | State | MA | Zip Code 02536 |
| Lender | CLIENT: RONALD HANSEN | | | | | |



### Comparable 1
68 SOUTHVIEW WAY
| Prox. to Subject | 1.81 miles |
| Sale Price | 634,900 |
| Gross Living Area | 2,598 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.5 |
| Location | GOOD |
| View | TYPICAL/AREA |
| Site | 23,719 SF |
| Quality | VERY GOOD |
| Age | 4YRS/2EFF. |



### Comparable 2
21 VALERIE CIRCLE
| Prox. to Subject | 2.53 miles |
| Sale Price | 619,000 |
| Gross Living Area | 2,609 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3 |
| Location | GOOD |
| View | GOOD/POND |
| Site | 20080 SF |
| Quality | GOOD |
| Age | 16YRS/3EFF. |



### Comparable 3
16 RIVER HAVEN LANE
| Prox. to Subject | 0.02 miles |
| Sale Price | 599,000 |
| Gross Living Area | 2,556 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | GOOD |
| View | TYPICAL/AREA |
| Site | 37758 SF |
| Quality | GOOD |
| Age | 6YRS/2EFF. |